Citation/Title
437 F.Supp.2d 590, Goedeke v. McBride, (S.D.W.Va. 2006)

*590   437 F.Supp.2d 590

United States District Court, S.D. West Virginia.

**Raymond GOEDEKE, Petitioner,**
v.
**Thomas McBRIDE, Warden, Respondent.**

Civil Action No. 5:05-cv-00554.
July 13, 2006.

**Background:** State inmate filed petition for writ of habeas corpus.

**Holdings:** The District Court, Goodwin, J., held that:

(1) statutory period for seeking federal habeas relief was not statutorily tolled, but

(2) statutory period was equitably tolled.

*[handwritten: Pages 2, 10, 11]*

Ordered accordingly.

West Headnotes

[1]   Habeas Corpus ⚖603

   197 ----
       197III Jurisdiction, Proceedings, and Relief
          197III(A) In General
             197k603 Laches or Delay.

State inmate did not properly file state habeas petition, and thus, statutory period for inmate to file federal habeas petition was not statutorily tolled during period after state court appointed counsel to represent him in state habeas proceedings, where inmate had mailed state judge partially completed form that failed to assert any grounds for relief, and form was never docketed. 28 U.S.C.A. § 2244(d)(2).

[2]   Habeas Corpus ⚖603

   197 ----
       197III Jurisdiction, Proceedings, and Relief
          197III(A) In General
             197k603 Laches or Delay.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

Page 2

437 F.Supp.2d 590, Goedeke v. McBride, (S.D.W.Va. 2006)

   For equitable tolling to apply in federal habeas proceeding, petitioner must establish that: (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) prevented him from filing on time. 28 U.S.C.A. § 2244(d).

[3]   Habeas Corpus ⚷603

      197 ----
         197III Jurisdiction, Proceedings, and Relief
            197III(A) In General
               197k603 Laches or Delay.

   Attorney negligence in interpreting statute of limitations for seeking federal habeas relief does not constitute extraordinary circumstances necessary to warrant equitable tolling. 28 U.S.C.A. § 2244(d).

[4]   Habeas Corpus ⚷690

      197 ----
         197III Jurisdiction, Proceedings, and Relief
            197III(C) Proceedings
               197III(C)1 In General
                  197k690 Counsel, Right and Necessity.

   No constitutional right to counsel exists during federal habeas proceeding.

[5]   Habeas Corpus ⚷603

      197 ----
         197III Jurisdiction, Proceedings, and Relief
            197III(A) In General
               197k603 Laches or Delay.

   Statutory period for state inmate to file federal habeas petition was equitably tolled for period during which attorney represented him in state habeas proceedings, where attorney consistently coerced inmate over six year period into believing that his petition was almost ready, even though attorney had completed no substantive work on case and never filed petition, and inmate had no reason to disbelieve attorney's constant assurances. 28 U.S.C.A. § 2244(d).

   *591 Bryant J. Spann, Allen Guthrie McHugh & Thomas, Charleston, WV, for Plaintiff.

   Dawn E. Warfield, Robert D. Goldberg, Office of the Attorney General, Charleston, WV, for Defendant.

**MEMORANDUM OPINION AND ORDER**

© 2007 Thomson/West. No claim to original U.S. Govt. works.

437 F.Supp.2d 590, Goedeke v. McBride, (S.D.W.Va. 2006)

GOODWIN, District Judge.

Pending before the court is Raymond Goedeke's Petition for Writ of Habeas Corpus. The matter initially was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, to make findings and recommendations. The Magistrate Judge recommended I dismiss Mr. Goedeke's petition because it was untimely. After reviewing objections filed by the petitioner, I determined that additional factfinding was necessary. On March 28, 2006, I held an evidentiary hearing to determine whether Mr. Goedeke's petition was timely. Upon consideration of the evidence adduced at the hearing and the post-hearing briefs, I **FIND** that the extraordinary circumstances of this case warrant equitably tolling of the applicable statute of limitations to allow Mr. Goedeke's petition.

### I. Background

The petitioner, Raymond Goedeke, is serving a sentence of life without mercy after being convicted of first-degree murder on June 10, 1994 in Raleigh County Circuit Court. The West Virginia Supreme Court of Appeals rejected his petition for appeal on February 1, 1995.

On April 20, 1995, Mr. Goedeke wrote a letter to the Honorable Thomas Canterbury, the Raleigh County Circuit Judge who presided at his trial. The letter asks Judge Canterbury to appoint a lawyer to help Mr. Goedeke prepare a petition for a writ of habeas corpus. Mr. Goedeke writes, "I know very little about the law, and other than this form, I don't know what to do to represent myself." The form he references is a partially completed state habeas petition photocopied from Appendix A to the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia. The completed portions of the form did not list any grounds for relief but merely included information such as the docket number of his case, the nature of his sentence, and the names of his attorneys. Presumably, Judge Canterbury did not send the letter to the Raleigh County Circuit Clerk because the letter does not *592 appear on the docket sheet. Judge Canterbury, however, appointed Robert File, a partner in the firm of File, Payne, Scherer & File, to represent Mr. Goedeke. (FN1) The order provides in full:

> An affidavit has been filed with this Court reciting that RAYMOND GOEDEKE is financially unable to employ counsel for representation in certain proceedings before this Court. After reviewing the eligibility determination made by the Public Defender pursuant to W. Va.Code 29-21-1, et seq., the Court is of the opinion the eligibility requirements of West Virginia Code 29-21-1, et seq., are satisfied. Accordingly, the Court ORDERS:
>
> That ROBERT FILE a licensed Attorney at Law practicing before the Bar of this Court is appointed to represent RAYMOND GOEDEKE in the following described proceedings before this Court:
>
> WRIT OF HABEAS CORPUS

© 2007 Thomson/West. No claim to original U.S. Govt. works.

437 F.Supp.2d 590, Goedeke v. McBride, (S.D.W.Va. 2006)

ENTER this 04TH day of MAY, 1995.

Order Appointing Counsel Following Eligibility Determination By Public Defender, *West Virginia v. Goedeke,* 93-F-515 (W.Va.Cir.Ct. May 4, 1995). Judge Canterbury appointed counsel without first reviewing the merits of Mr. Goedeke's claims even though West Virginia law mandates this review. *See* W. Va.Code § 23-4A-4(a) (2006) (requiring the court to review the petition's alleged facts for frivolity and good faith prior to appointing counsel). Despite the law, Raleigh County Assistant Prosecuting Attorney Kristen Keller explained that such "automatic" appointments were commonplace in Raleigh County at the time.

Mr. File then assigned the matter to C. Michael Griffith, an associate at the firm. Mr. Goedeke learned of the assignment from his ex-wife. After not hearing from Mr. Griffith for two months, Mr. Goedeke attempted to remove him by filing a motion, which the circuit court denied on July 19, 1995. In the order denying the motion, the court discusses Mr. Goedeke as if he already filed a habeas petition. The court refers to Mr. Goedeke as "defendant/petitioner" and reiterates that the court appointed current counsel to prosecute a habeas petition.

Between August 1995 and June 1996, Mr. Griffith met with Mr. Goedeke approximately once per month. During this period, Mr. Griffith began suffering major health problems--he was diagnosed with hypothyroidism and had to undergo chemotherapy treatments for Hodgkin's disease. After a June 14, 1996 meeting, Mr. Griffith stopped visiting Mr. Goedeke. In an October 29, 1996 letter, Mr. Goedeke explained it was the third letter he wrote to Mr. Griffith without a response since the June meeting, and "was wondering if you had forgotten about me."

In December 1996, Mr. Goedeke learned that Mr. Griffith left the File firm but that the firm would retain his case. On May 28, 1997, however, Mr. File wrote Mr. Goedeke to inform him that Mr. Griffith, even though he left the firm, would continue to represent him "because he has already spent so much time on this matter." The letter explains that Mr. File and Mr. Griffith discussed the matter within the preceding week after receipt of a May 9, 1997 letter from Mr. Goedeke inquiring about the status of his case. Presumably, Mr. File and Mr. Griffith did not determine who would take Mr. Goedeke's case until receiving Mr. Goedeke's May 9 letter, which occurred at least five months after Mr. Griffith's departure from the firm.

Mr. Griffith resumed his monthly meetings with Mr. Goedeke from June through **\*593** September 1997. After the visits once again stopped, Mr. Goedeke wrote to Mr. Griffith on February 20, 1998, to ask about the status of his case in lieu of not hearing from Mr. Griffith for more than five months. Mr. Griffith did not respond to the February 20 letter, nor did he respond to the same letter when Mr. Goedeke resent it on April 20, 1998. On April 30, 1998, Mr. Goedeke attempted to contact Mr. Griffith via telephone, but received a message stating that access to Mr. Griffith's number has been restricted.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

437 F.Supp.2d 590, Goedeke v. McBride, (S.D.W.Va. 2006)

Mr. Goedeke filed an ethics complaint against Mr. Griffith with the West Virginia State Bar's Lawyer Disciplinary Council on May 18, 1998. After receiving notice of the complaint, Mr. Griffith visited Mr. Goedeke on July 2; that same day, Mr. Goedeke wrote a letter to the council asking it to withdraw his ethics complaint. On July 6, Mr. Griffith sent a letter to the council in response to Mr. Goedeke's complaint. Mr. Griffith claimed he had spent 195.8 hours investigating Mr. Goedeke's claims. He admitted, "There have been periods of time in which little work has been done on Mr. Goedeke's case." Of the hours Mr. Griffith allegedly worked on the case, approximately 45.1 of them were spent meeting with Mr. Goedeke or his ex-wife in person. Mr. Griffith stated he met with Mr. Goedeke 29 times. The Lawyer Disciplinary Council officially closed its investigation on October 2, 1998.

On October 5, 1998, Mr. Griffith resumed communication with Mr. Goedeke to inform him that he has "begun to gather cases in support of our claims on your various petitions" and that he would meet with him during the next month. Mr. Griffith, however, did not communicate with Mr. Goedeke again until March 9, 1999, when he sent him a letter responding to a February 16, 1999 letter from Mr. Goedeke. Mr. Griffith explained the long delay as follows, "This was partly due to weather and health reasons and partly because the work that is required in your case at the present time does not require contact with you." Mr. Griffith concluded the letter by stating he would visit Mr. Goedeke in April to review cases that he and his paralegal are finding.

On April 22, 2000, after receiving no response for more than a year, Mr. Goedeke wrote to Mr. Griffith inquiring about his case. He asserted, "I need to know if you will be finished with my Habeas soon or if I need to get another lawyer to finish it for me." Though stating he understood Mr. Griffith's medical and business problems, Mr. Goedeke explained that Mr. Griffith has "been working on this Habeas for most of 5-5 1/2 years and it still isn't finished. I have been very patient, but now it needs to be completed." (emphasis in original). Upon yet again receiving no response, Mr. Goedeke wrote Mr. Griffith a similar letter on May 12, 2000, and stated that if he did not hear back from him by May 19, he would contact the court to obtain a new attorney. On May 15, Mr. Griffith responded by explaining his schedule was dictated mostly by court schedules. He asserted, "I have instructed my secretary to remind me each day to get some work done on your case until I can get it into the Court. There is not much to do and I hope that I can do it quickly."

On June 15, Mr. Goedeke again asked about the status of his petition in a letter stating he called Mr. Griffith's office on June 6. The June 15 letter set a July 3 deadline. In response, Mr. Griffith met with Mr. Goedeke on June 28. Despite this meeting, the petition remained unfinished and Mr. Goedeke sent another letter on September 11. In this letter, Mr. Goedeke contended he would file another complaint with the Lawyer Disciplinary Council if Mr. Griffith failed to file the petition by September 21, 2000. Mr. Griffith responded **\*594** on September 18 that he could not finish the petition by Mr. Goedeke's deadline but offered to discuss the matter the week of October 2. On September 20, Mr. Goedeke sent a letter agreeing to a meeting, which occurred on October 20. Mr.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

Page 6

437 F.Supp.2d 590, Goedeke v. McBride, (S.D.W.Va. 2006)

Goedeke called Mr. Griffith's office on November 17, only to receive notice that Mr. Griffith had been sick and out of the office. He then wrote another letter to Mr. Griffith on December 6 that expressed his hope of having a petition completed by Christmas.

Upon receiving no reply, Mr. Goedeke wrote a reminder letter on January 8, 2001. Finally, on January 24, 2001, Mr. Goedeke expressed his concerns in a longer letter:

> You were given the case for my Habeas Corpus in early 1995. There was [sic] several months when you left, File, Payne, Scherer, and File, that nothing was done on my case. There has been three times that you were ill and could not work, which I can understand and I'm sorry. That leaves about five years that you have had to complete my Habeas and get a court date.
>
> You have given me many excuses, there have been many delays, and there were times I didn't hear from you for months at a time until I contacted you. I have been very patient, and you have wasted time not working on my case, but I will give you one last chance. I want the petitions finished, signed, notarized and have a court date scheduled by February 16, 2001.
>
> If not, on February 19, 2001, I will send a complaint to the Lawyer Disciplinary Board, and a letter to the court to be assigned a new lawyer. You had my case before you started your law firm, but you put my case on the back burner for 5 years. You act as though my case isn't important, but to me it could mean my freedom. My case is as important as any of the cases you have had these past six years. I await your response.

Letter from Raymond Goedeke to C. Michael Griffith (Jan. 24, 2001). On February 9, Mr. Goedeke sent another letter to Mr. Griffith to remind him of the February 16 deadline. On February 13, Mr. Griffith filed a motion to withdraw as Mr. Goedeke's counsel and wrote Mr. Goedeke a letter with a copy of the motion. In a March 22 order, the Raleigh County Circuit Court stated the May 4, 1995 order appointing counsel was entered improperly because no habeas petition actually existed at that time. As a result, no court made the requisite probable cause determination on the merits before appointing counsel as required by law. The court granted Mr. Griffith's motion to withdraw as counsel, set aside the May 4, 1995 order appointing counsel, (FN2) and explained that if Mr. Goedeke files a petition, the court then would determine if probable cause exists entitling him to the appointment of counsel.

On April 2, 2001, Mr. Goedeke filed another ethics complaint with the Lawyer Disciplinary Council. In this complaint, he explains that on multiple occasions he asked Mr. Griffith whether a deadline existed for filing a federal habeas petition, and each time Mr. Griffith told him that no deadline existed. Mr. Griffith's lack of knowledge concerning any federal habeas deadline also is apparent from an April 9, 2001 letter to Mr. Goedeke and a May 9, 2001 response to the ethics committee when he states he researched the issue yet found no deadlines. The Lawyer Disciplinary *595 Council investigated Mr. Griffith's

© 2007 Thomson/West. No claim to original U.S. Govt. works.

437 F.Supp.2d 590, Goedeke v. McBride, (S.D.W.Va. 2006)

conduct and voted to admonish him because of his lack of diligence in pursuing Mr. Goedeke's petition.

On July 2, 2001, Mr. Goedeke filed his state habeas petition, which was dismissed on January 30, 2002. The West Virginia Supreme Court of Appeals denied his petition for appeal on October 21, 2004. Mr. Goedeke filed the pending federal petition on July 2, 2005.

## II. The AEDPA

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs the timeliness of Mr. Goedeke's petition. Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (codified as amended in scattered sections of 21 and 28 U.S.C.). The AEDPA was signed into law on April 24, 1996, and became effective immediately. It subjected defendants seeking federal habeas review to a filing deadline for the first time in history. 1 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 5.2 (4th ed. 2001) ("Until 1996, there was no fixed statute of limitations for filing federal habeas corpus petitions."). The AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review....

28 U.S.C. § 2244(d)(1) (2000). For prisoners whose state convictions became final before Congress passed the AEDPA, the one-year limitations period began to run on the Act's effective date. *Hernandez v. Caldwell*, 225 F.3d 435, 438-39 (4th Cir.2000). These prisoners had until April 24, 1997, to file their federal habeas petitions. *Id.* Mr. Goedeke filed his federal petition on July 2, 2005. Because his state conviction became final prior to the passage of the AEDPA, he had until April 24, 1997, to file his petition absent tolling.

## III. Statutory Tolling

The AEDPA states that the one-year limitations period is automatically tolled for "the time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2) (emphasis added). The statute of limitations for filing a federal habeas petition tolls for the entire period of state post-conviction proceedings--"from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." *Taylor v. Lee*, 186 F.3d 557, 561 (4th Cir.1999). Invoking the AEDPA's statutory tolling procedures, however, requires a properly filed state petition. Mr. Goedeke's state petition--filed July 2, 2001--was filed well after the April 24, 1997 deadline for his federal petition passed.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

437 F.Supp.2d 590, Goedeke v. McBride, (S.D.W.Va. 2006)

[1] Though Judge Canterbury appointed counsel for Mr. Goedeke on May 4, 1995, for help in prosecuting his habeas petitions, Mr. Goedeke had not filed a petition. He merely had mailed Judge Canterbury a partially completed form that failed to assert any grounds for relief. This form, which was never docketed, certainly cannot be considered "properly filed" as contemplated by § 2244(d)(2). Mr. Goedeke cannot be blamed for this error, as not only was he appointed counsel improperly, but the court allowed the error to stand uncorrected for more than six years. Despite Mr. Goedeke's lack of blame, however, the AEDPA's statutory tolling procedures provide him no assistance *596 because a "properly filed" state petition did not exist until 2001.

## IV. Equitable Tolling

[2] The AEDPA's statute of limitations also is subject to equitable tolling. *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir.2000); *see also* Aaron G. McCullough, Note, *For Whom the Court Tolls: Equitable Tolling of the AEDPA Statute of Limitations in Capital Habeas Cases*, 62 Wash. & Lee L.Rev. 365, 384 (2005) ("Every court to address the issue has determined that the AEDPA's deadline is a statute of limitations subject to equitable tolling."). The Fourth Circuit cautions that equitable tolling is rarely warranted:

> Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris*, 209 F.3d at 330. For equitable tolling to apply, a defendant must establish that (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) prevented him from filing on time. *Rouse v. Lee*, 339 F.3d 238, 247 (4th Cir.2003) (en banc); *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir.2001). Because the doctrine is discretionary and "turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules" of application. *Harris*, 209 F.3d at 330 (quoting *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999)).

[3][4] In the Fourth Circuit, attorney negligence in interpreting the AEDPA's statute of limitations does not constitute the extraordinary circumstances necessary to warrant equitable tolling. *Id.* at 331 ("In short, a mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding."); *see also Rouse*, 339 F.3d at 248 (citing similar decisions from the Second, Third, Fifth, Seventh, Eighth, Ninth, Eleventh, and Federal Circuits). Simple attorney negligence also fails to constitute circumstances external to the petitioner's

© 2007 Thomson/West. No claim to original U.S. Govt. works.

437 F.Supp.2d 590, Goedeke v. McBride, (S.D.W.Va. 2006)

own conduct. *Rouse*, 339 F.3d at 249. "[A] counsel's errors are attributable to [the petitioner] not because he participated in, ratified, or condoned their decisions, but because they were his agents, and their actions were attributable to him under standard principles of agency." *Id.* The justification for this rule is that the constitutional right to effective counsel applies only when a constitutional right to counsel exists, and no constitutional right to counsel exists during a federal habeas proceeding. *Coleman v. Thompson*, 501 U.S. 722, 753-54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *see Pennsylvania v. Finley*, 481 U.S. 551, 555-56, 107 S.Ct. 1990, 95 L.Ed.2d 539 (finding no constitutional right to counsel beyond first appeal of right). As a result, because a habeas counsel's error cannot be constitutionally ineffective, the error may fairly be attributable to the petitioner and is not external to the petitioner's own conduct. *Rouse*, 339 F.3d at 250.

Clearly, Mr. Griffith was negligent in his representation of Mr. Goedeke. Despite researching the issue, he did not know a filing deadline existed for federal habeas petitions. He failed to file any kind of petition. In 1998, halfway through his ***597** representation of Mr. Goedeke, he claimed to have worked nearly 200 hours on getting a petition prepared. It remains uncertain how much Mr. Griffith claimed to have worked on the case from 1998 to 2001, but apparently any work he claimed to have done was borderline incompetent. Despite Mr. Griffith's floundering representation of Mr. Goedeke, the law in this circuit is clear that simple attorney negligence cannot justify equitable tolling. (FN3)

In *Rouse v. Lee*, a 7-4 en banc decision, the Fourth Circuit refused to equitably toll the AEDPA's statute of limitations when the petitioner's attorney miscalculated the deadline and filed the federal petition one-day late. *Rouse*, 339 F.3d at 257. Despite a pending sentence of death and the petition's apparently strong underlying grounds, (FN4) the court made clear that attorney negligence could not justify equitable tolling. *Id.* at 251. Mr. Goedeke's case, however, is distinguishable from *Rouse*.

In argument to the court, one of the cases Mr. Rouse heavily relied on was *McLaughlin v. Lee*, No. 5:99-HC-436, 2000 WL 34336152 (E.D.N.C. Oct. 17, 2000) (unpublished), where the district court equitably tolled the statute of limitations because petitioner's attorneys did not take any action at all. The *McLaughlin* court concluded that the petitioner's attorneys placed him "in the extraordinary situation of believing that he had counsel when, in fact, he had counsel in name only." *McLaughlin*, at 2000 WL 34336152, *3. The *Rouse* court distinguished *McLaughlin* on the grounds Mr. Rouse's attorneys actually took action by filing a petition, "albeit one day late." *Rouse*, 339 F.3d at 250 n. 14 ("Despite Rouse's attempts to characterize his prior ***598** attorneys' conduct as 'grossly negligent' and thus akin to such abandonment, it is simply not true that Rouse's attorneys took no action at all."). Instead, Mr. Rouse's attorneys made an "ordinary legal error to which the principles of equitable tolling do not apply." *Id.* The *Rouse* court explains it had no reason to consider whether equitable tolling in a situation like *McLaughlin* is proper as that situation was not presented by the facts of Mr. Rouse's case. *Id.*

© 2007 Thomson/West. No claim to original U.S. Govt. works.

437 F.Supp.2d 590, Goedeke v. McBride, (S.D.W.Va. 2006)

   That situation, however, is present in Mr. Goedeke's case. Mr. Griffith's representation, or lack thereof, cannot be characterized as simple attorney negligence. He failed to represent his client over the course of six years despite constantly telling his client otherwise. I **FIND** his claims that he arduously was working on Mr. Goedeke's petition throughout the six-year period incredible. The State introduced no evidence to show that Mr. Griffith actually worked on Mr. Goedeke's case other than write Mr. Goedeke short letters that said progress was being made. (FN5) Based on the evidence in the record, I **FIND** Mr. Griffith completed no substantive work on Mr. Goedeke's case. Though Mr. Griffith "represented" Mr. Goedeke for more than six years, Mr. Goedeke would have been in the same position had he never had an attorney.

   [5] Had Mr. Griffith completely abandoned Mr. Goedeke or told him that he would not work on his petition, Mr. Goedeke could have acquired another attorney or filed a petition on his own. Mr. Griffith, however, consistently coerced Mr. Goedeke into believing that his petition was almost ready. Mr. Goedeke had no reason to disbelieve Mr. Griffith's constant assurances. (FN6) I **FIND** that Mr. Griffith's repeated false assurances led Mr. Goedeke to believe Mr. Griffith would complete his petition and coerced Mr. Goedeke into retaining Mr. Griffith in lieu of taking other action. I **FIND** the situation created by Mr. Griffith's false assurances is more severe than the situation created by an attorney who completely abandons his client from day one. Mr. Griffith's conduct misled Mr. Goedeke for more than six years and undermined faith in the judicial system. Finding otherwise would cause indigent defendants to question the veracity of court-appointed counsel at every stage of every proceeding. I **FIND** that Mr. Griffith's repeated assurances constitute, at best, extreme exaggerations and most likely false representations. Based on the evidence of Mr. Griffith's serious misconduct, I **FIND** the facts of this case present the rare situation where equitable tolling is warranted. See United States v. *Martin*, 408 F.3d 1089, 1093-94 (8th Cir.2005) (finding an attorney's consistent assurances that he would file a petition grounds for equitable tolling); *Spitsyn v. Moore*, 345 F.3d 796, 800 (9th Cir.2003) ("Though ordinary attorney negligence will not justify equitable tolling, we have acknowledged that where an attorney's misconduct is sufficiently egregious, it may constitute an 'extraordinary circumstance' warranting equitable tolling."); *Baldayaque v. United States*, 338 F.3d 145, 152-53 (2d Cir.2003) (finding attorney conduct that is sufficiently egregious to justify equitable tolling).

   *599. Mr. Griffith's constant assurances coerced Mr. Goedeke into a false sense of trust. Mr. Griffith's egregious conduct, which I **FIND** to be even more severe than completely abandoning his client, constitutes extraordinary circumstances. Because the evidence revealed that Mr. Griffith never actually acted on Mr. Goedeke's behalf, Mr. Griffith was not acting as an agent of Mr. Goedeke; therefore, the extraordinary circumstances of this case were external to Mr. Goedeke's own conduct. I find these extraordinary circumstances prevented Mr. Goedeke from filing his federal petition on time.

*V. Conclusion*

© 2007 Thomson/West. No claim to original U.S. Govt. works.

437 F.Supp.2d 590, Goedeke v. McBride, (S.D.W.Va. 2006)

Accordingly, I **FIND** that AEDPA's statute of limitations should be equitably tolled until Mr. Goedeke learned that Mr. Griffith was no longer representing him. This notice occurred when Mr. Goedeke received an April 9, 2001 letter from Mr. Griffith that contained a copy of the <u>circuit court's order removing him as counsel</u>. In this letter, despite already being removed as counsel, Mr. Griffith <u>once again assured</u> Mr. Goedeke that <u>no deadline exists</u> for filing a federal habeas petition: ("I have made a quick review of the rules of criminal procedure and the appellate rules for federal courts and can find no time limit indicated on the filing of a federal habeas corpus petition.") Letter from C. Michael Griffith to Raymond Goedeke (Apr. 9, 2001). Once Mr. Goedeke received this letter, the AEDPA's one-year statute of limitations commenced, and began to run until it was tolled by the filing of a state habeas petition on July 2, 2001. Once the West Virginia Supreme Court of Appeals denied an appeal of the state petition on October 21, 2004, the statute of limitations continued to run. Mr. Goedeke filed his federal petition on July 12, 2005, approximately 18 days prior to the deadline. Therefore, I **FIND** his petition <u>to be timely</u>. The case is **REMANDED** to the Magistrate Judge for issuance of proposed findings and recommendation regarding the merits of Mr. Goedeke's habeas petition.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party, and **DIRECTS** the Clerk to post this published opinion at http://www.wvsd.uscourts.gov.

(FN1.) According to the State, Judge Canterbury entered this order twelve days after retiring.

(FN2.) The petitioner points out that the judge who set aside the May 4, 1995 order in 2001 is the same judge who issued the July 19, 1995 order denying Mr. Goedeke's motion for new counsel. By denying Mr. Goedeke's motion for new counsel in 1995, the judge impliedly approved the May 4 order appointing counsel.

(FN3.) The law is also clear that a petitioner's ignorance of the law does not justify equitable tolling. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir.2004) ("[The petitioner's] first three contentions are variations on the same theme--that he did not understand how the statute of limitations operated in this case. But, even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling.").

(FN4.) The apparent strength of Mr. Rouse's underlying claims is clear from the facts brought forth in Judge Motz's dissenting opinion:

Eleven years ago, a North Carolina all-white jury convicted Rouse, an African-American, of the robbery, attempted rape, and brutal murder of Hazlel Colleen Broadway, a sixty-three-year old white woman. On the jury's recommendation, the state judge sentenced Rouse to death. After his appeal was denied, Rouse discovered new evidence that the mother of one member of the jury had been robbed, raped, and murdered by a man who was later executed for the crimes. When all prospective jurors were asked for such information at voir dire, the

© 2007 Thomson/West. No claim to original U.S. Govt. works.

437 F.Supp.2d 590, Goedeke v. McBride, (S.D.W.Va. 2006)

victim's son had remained silent.

After serving on Rouse's jury, this juror reportedly stated that he had intentionally concealed his mother's tragic death and carefully crafted his other responses to voir dire questions, because he wanted to be on the jury that judged Rouse.  Moreover, this juror assertedly expressed intense racial prejudice against African Americans, calling them "niggers" and opining that African Americans care less about life than white people do and that African-American men rape white women in order to brag to their friends.

Because the juror did not reveal his own family's tragedy or his virulent racial prejudice, Rouse had no opportunity to object to the juror or challenge his ability to judge and sentence Rouse impartially.  Based on this newly discovered evidence, Rouse asserted a jury bias claim on collateral attack in state court, which twice denied his claim without a hearing.  Rouse then filed the petition giving rise to this appeal ... but he filed it one day after the ... limitations period expired.

*Rouse*, 339 F.3d at 257-58 (Motz, J., dissenting);  see also Roger D. Groot, *Comment on For Whom the Court Tolls:  Equitable Tolling of the AEDPA Statute of Limitations in Capital Habeas Cases*, 62 Wash. & Lee L.Rev. 407, 408-09 (2005) (discussing facts of *Rouse* ).

*599_  (FN5.) Despite Mr. Griffith's presence at the evidentiary hearing, the State did not find it necessary to call him to testify about the work he performed on Mr. Goedeke's case.

 (FN6.) The State inexplicably argues both that Mr. Griffith worked diligently on Mr. Goedeke's case and that Mr. Goedeke should not have believed Mr. Griffith's assurances.  As the petitioner's counsel explains, "the State contends that Mr. Griffith was not lying, but that Mr. Goedeke should not have believed him."  (Pet.'s Post-Hr'g Reply Br. 2.)

© 2007 Thomson/West. No claim to original U.S. Govt. works.