UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Crim. No. 04-10269-GAO |
| ESPEL CALIXTO, JR., a/k/a "Pico," | ) ) ) | |
| Defendant. | ) ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America (the "government") submits this sentencing memorandum in connection with the upcoming sentencing of the defendant, Espel Calixto, a/k/a "Pico" ("CALIXTO"). For the reasons set forth below, the government respectfully recommends the following sentence: (1) a term of imprisonment of 188 months, (2) a term of supervised release of six years, (3) a fine of $15,000 unless the Court determines that CALIXTO is unable to pay a fine, and (4) a mandatory special assessment of $300.

### I.   BACKGROUND

This case stems from a joint investigation by the U.S. Drug Enforcement Administration ("DEA") and the Woburn Police Department into CALIXTO's cocaine distribution activity in and around the Creston Avenue Housing Projects, a public housing project in Woburn, Massachusetts. Presentence Report ("PSR") at ¶ 8. The investigation began in July 2004, when a Confidential Witness ("CW") told the investigators that he could purchase cocaine from CALIXTO, who was a known cocaine dealer in the area. Id. The CW also told officers that CALIXTO stored cocaine at 40 Creston Avenue, which was CALIXTO's niece's residence within the projects. PSR at ¶ 9.

The CW ultimately performed five controlled purchases of cocaine from CALIXTO while being monitored by surveillance agents. PSR at ¶ 11. A summary of the five transactions follows:

(1) On July 19, 2004, CALIXTO sold 1.0 gram of cocaine to the CW for $100;

(2) On July 28, 2004, CALIXTO sold 1.1 grams of cocaine to the CW for $100;

(3) On July 29, 2004, CALIXTO sold 1.0 gram of cocaine to the CW for $100;

(4) On August 3, 2004, CALIXTO sold 0.83 gram of cocaine to the CW for $100;

(5) On August 4, 2004, CALIXTO sold 1.2 grams of cocaine to the CW for $150.

See PSR at ¶¶ 13-34.

Although CALIXTO denies it (see Deft's Sent. Memo. at 2), as stated above, the CW told investigators that CALIXTO used another individual's unit at 40 Creston Avenue as a stash house and place to process and package cocaine. PSR at ¶¶ 9, 35. On August 4, 2004, investigators corroborated this information from the CW in two ways: First, they executed a consent search of 40 Creston Avenue, which did, in fact, lead to the seizure of cocaine hidden therein, along with a scale and packaging material. Second, they interviewed the resident of 40 Creston Avenue, Rosa Vasquez, who confirmed that the cocaine belonged to CALIXTO, who has been using her residence to store and package his cocaine since January or February of 2004. PSR at ¶¶ 35-37. The investigators sent the cocaine seized from 40 Creston Avenue to a laboratory, which determined that the 10 bags of cocaine contained a total of 3.8 grams (net) of cocaine. PSR at ¶38. The total amount of cocaine involved in this investigation was therefore 8.93 grams.

## II.   DISCUSSION

Under the post-Booker regime, the First Circuit has endorsed a three-step approach to sentencing, under which the sentencing court should:  (1) calculate the advisory Guidelines Sentencing Range ("GSR"), (2) determine whether any traditional departures are warranted, then (3) consider the factors under 18 U.S.C. § 3553(a) to reach an appropriate sentence.  See United States v. Dixon, 449 F.3d 194, 204 (1st Cir. 2006); United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc); United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005).  See e.g., United States v. Pho, 433 F.3d 53, 61 (1st Cir. 2006) (advisory GSR first); United States v. Saez, 444 F.3d 15, 17 (1st Cir. 2006) (traditional departures second); Robinson, 433 F.3d at 35 (§ 3553(a) factors third).  Application of this three-step approach to the facts and circumstances of this case supports a sentence at the low-end of the applicable GSR -- *i.e.,* 188 months of imprisonment.

### A.   CALIXTO's GSR is 188-235 Months

Due to CALIXTO's lengthy, violent criminal history, the career offender guidelines apply to this case.  As determined by the U.S. Probation Office ("Probation"), CALIXTO has four prior felony convictions that qualify as predicate convictions under the career offender guidelines:

(1)   ¶ 75 -- 8/6/86 conviction in Middlesex Superior Docket No. 86-607 for Burning a Dwelling on or about October 8, 1985 in Woburn, Massachusetts, for which CALIXTO was sentenced to 7-10 years in MCI-Cedar Junction (CALIXTO was released from prison on December 23, 1991);

(2)   ¶ 80 -- 5/6/94 conviction in Middlesex Superior Docket No. 93-1756 for two counts of Assault and Battery with a Dangerous Weapon (to wit, knife) and one count of Witness Intimidation on or about November 24, 1993, for which CALIXTO was sentenced to 7-10 years in MCI-Cedar Junction by the (CALIXTO was released from prison on November 6, 1999);

    (3)    ¶ 81 -- <u>5/6/94 conviction in Middlesex Superior Docket No. 94-344</u> for six counts of Assault with a Dangerous Weapon (to wit, a firearm), one count of Assault and Battery with a Dangerous Weapon, one count of Discharging a Firearm Within 500 Feet of a Dwelling, and one count of Possession of a Firearm without a License on or about April 14, 1994, for which he received various sentences on various counts, including a 4-5 year suspended sentence, to run consecutively to his 7-10 year sentence in Docket No. 93-1756 (above);

    (4)    ¶ 82 -- <u>7/29/99 conviction in Worcester District Docket No. 9462CR3466</u> for Assault and Battery on or about June 29, 1994, for which CALIXTO was sentenced to 90 days in the house of correction to run concurrently with his 7-10-year sentence in Docket No. 93-1756 (above).

<u>See</u> PSR at ¶¶ 75, 80-82. All four of these convictions qualify as "prior felony convictions of either a crime of violence or a controlled substances offense" for purposes of USSG § 4B1.1. As such, CALIXTO's Guideline Sentencing Range ("GSR") is 188-235 months based on the following calculation:

- Base Offense Level:    34    (under § 4B1.1(b) because statutory maximum is 40 years)
- 3-level Reduction:    -3    (under § 3E1.1 for accepting responsibility)
- Total Offense Level:    31
- Criminal History Category:    VI    (under § 4B1.1(b))
- <u>GSR</u>:    <u>188-235 months</u>

<u>See</u> PSR at ¶¶ 65-67, 87, 188.

### B.   <u>No Traditional Departures Apply</u>

No traditional departures under the USSG apply here. As set forth at paragraph 207 of the PSR, in response to the section covering "factors that may warrant departure," the Probation Office responded, "none known." <u>See</u> PSR at ¶ 208. The government disagrees with CALIXTO's assertion that "the Court should depart downward on the basis of his actions in saving the life of Tommy McCool" (Deft's Sent. Memo. at 5), or "on the basis of his having

4

assisted state authorities, to wit, the Woburn Police Department, in removing guns from the streets of Woburn" (id.), or because "his status as a career offender significantly over-represents his criminal history" (id. at 5-6). The record before the Court simply does not support any such downward departure. Nor has CALIXTO cited any legal authority to support any of these requested departures.

Instead, the record before this Honorable Court supports a GSR sentence. The government agrees with Probation that no grounds for a traditional departure exist in this case.

        **C.**    **Section 3553(a) Factors Warrant a Low-End GSR Sentence**

Under 18 U.S.C. § 3553(a), in determining a sentence that is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing] set forth in [§ 3553(a)(2)]," the court must consider all of the factors set forth in § 3553(a)(1) through (a)(7). See 18 U.S.C. § 3553(a). Application of these factors to the instant case supports a sentence at the low-end of the GSR -- i.e., a sentence of 188 months of imprisonment. Specifically, the government notes the following:

- § 3553(a)(1) (nature and circumstances of the offense): CALIXTO's offenses -- conspiracy to distribute cocaine and distribution of cocaine inside a public housing project in violation of 18 U.S.C. §§ 841(a)(1), 846 and 860 -- are serious offenses. Although the total drug weight is under 10 grams, CALIXTO sold cocaine to the CW on five separate occasions over a period of only two weeks. He did so to make some "easy money" despite the extraordinarily addictive nature of cocaine and the destruction it would cause to the end-user(s). In addition, he did so within the protected location of a public housing project, bringing illegal drug activity and the dangers it creates to a residential area in which most

residents are captive due to financial hardships. CALIXTO's actions were therefore especially unfair to the housing project residents who tried their best to maintain a safe and healthy environment for their families.

- § 3553(a)(1) (history and characteristics of the defendant): The government also notes that according to Rosa Vasquez, CALIXTO had been engaged in illegal drug activity long before the offenses charged in this case. As stated in the PSR, Ms. Vasquez told investigators that CALIXTO had been using her unit at 40 Creston Avenue to store and package cocaine since January or February of 2004. PSR at ¶ 36. In addition, the investigators involved in the instant case informed the undersigned prosecutor that the Woburn Police Department had been dealing with CALIXTO for years, and that the Woburn Police considered CALIXTO one of their worst problems in the city. Indeed, CALIXTO's lengthy and violent criminal record reflects this determination:

    - In 1982, when CALIXTO was only 17 years old, he used a knife to assault and beat two men in Woburn. PSR at ¶¶ 70-71.

    - In 1983, at age 18 years, CALIXTO used a bottle to assault and beat another man in Woburn. Id. at ¶ 72.

    - In 1984, he was found guilty of two more counts of assault and battery with a dangerous weapon. Id. at ¶ 73.

    - In June 1985, at age 20 years, CALIXTO maliciously destroyed real property owned by William Mulrennan. Id. at ¶ 78.

    - On October 6, 1985, CALIXTO threatened to commit a crime against the person or property of William and Elizabeth Mulrennan. PSR at ¶ 79.

    - Two days later, on October 8, 1985, CALIXTO broke into the home of Mary Ellen Mulrennan and set fire to the home, which was owned by the Woburn Housing Authority. He was sentenced to 7-10 years at MCI-Cedar Junction, where he stayed until

> released in December 1991. <u>Id.</u> at ¶¶ 75-76.

- On September 6, 1993 (now 28 years old) -- less than two years after being released from his 7-10 year sentence at MCI-Cedar Junction -- CALIXTO used a knife to stab and beat a woman who stepped between CALIXTO and another woman, who he had allegedly threatened to kill. <u>Id.</u> at ¶ 80.

- On January 16, 1994, CALIXTO shot a gun within 500 feet of a home, and used the gun to assault 7 people. Id. at ¶ 81.

- In March 1994, CALIXTO assaulted his ex-girlfriend, Violet Lopez, by punching her in the face, breaking her cheek bones, and requiring plastic surgery. <u>PSR</u> at ¶ 82.

- On May 6, 1994, CALIXTO was sentenced to another 7-10 year sentence at MCI-Cedar Junction, to run concurrently with other sentences. He was eventually released on November 6, 1999.

- At the time of the instant offenses in 2004, CALIXTO was still under the probationary portion of the sentence imposed on May 6, 1994.

In addition to the foregoing crimes, which include several crimes against women, CALIXTO has a history of abuse-prevention orders, which several different women have obtained against him. The government notes the following:

- August 22, 1995 Abuse Prevention Order based on Violet Lopez's affidavit stating that CALIXTO punched her in the face, breaking her cheek bone (resulting in the assault conviction discussed above). PSR at ¶ 132.

- February 26, 2002 Abuse Prevention Order based on Mary Ellen Mulrennan's affidavit stating that CALIXTO burned her apartment in past (see criminal conviction discussed above) and that she feared further abuse. PSR at ¶ 134.

- February 3, 2003 Abuse Prevention Order based on Ann O'Meara's affidavit stating that CALIXTO has continually contacted her over several months and that she felt threatened by his language, threats and history of violence. PSR at ¶ 136.

- December 3, 2003 Abuse Prevention Order based on a second affidavit by O'Meara, stating that CALIXTO has made more

       threats against her due to her previous restraining order, including threats "to bash [her] head in."  PSR at ¶ 138.

- § 3553(a)(2):    In fashioning CALIXTO's sentence, the Court must also consider the need for a just sentence to reflect the seriousness of the offenses, to promote respect for the law, to afford adequate deterrence, and to protect the public.  In light of the seriousness of the drug offenses at issue here and CALIXTO's clear failure to turn away from a life of crime despite numerous lengthy state sentences in the past, a term of imprisonment of 188 months would be an appropriate sentence.

- § 3553(a)(3):    Subsection (a)(3) requires the Court to consider "the kinds of sentences available."  Here, the statute under which CALIXTO was convicted requires the Court to sentence CALIXTO to a term of imprisonment of at least one year and up to 40 years and, as outlined above, the GSR is 188-235 months.  These terms of imprisonment illustrate the seriousness of CALIXTO's offenses and criminal history, and reflect the intent of both Congress and the Sentencing Commission to treat them as such.

- § 3553(a)(4):  Under subsection (a)(4), the Court must also consider the GSR.  Again, here, the GSR is a term of imprisonment of 188-235 months.  According to the First Circuit, this sentencing range is entitled to substantial weight and certainly to more weight than the other factors set forth in § 3553(a).  See United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) ("the guidelines cannot be called just 'another factor' in the statutory list, 18 U.S.C. § 3553(a) (2000), because they are the only *integration* of the *multiple* factors and, with

important exceptions, their calculations were based upon the actual sentences of many judges") (emphasis in original).

- § 3553(a)(6): Finally, the government notes the need to avoid sentencing disparity among defendants with similar crimes and criminal histories. The Court would satisfy this statutory sentencing factor by imposing a sentence within the applicable GSR, which was designed to do just that -- *i.e.,* avoid sentencing disparity among individuals with similar crimes and criminal histories.

### III.   CONCLUSION

For all of the foregoing reasons, the government respectfully submits that the following sentence is appropriate in this matter: (1) a term of imprisonment of 188 months, (2) a term of supervised release of six years, (3) a fine of $15,000 unless the Court determines that CALIXTO is unable to pay a fine, and (4) a mandatory special assessment of $300.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

   */s/ Lisa M. Asiaf*
By:   Lisa M. Asiaf
Assistant U.S. Attorney
(617) 748-3268

Dated:   January 10, 2008

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on Jan. 10, 2008.

                                       */s/ Lisa M. Asiaf*
                                  Lisa M. Asiaf