```
 1                    UNITED STATES DISTRICT COURT FOR
                       THE DISTRICT OF MASSACHUSETTS
 2

 3
                                      )
 4   UNITED STATES OF AMERICA,        )
                                      )
 5            Plaintiff,              )
                                      )   Criminal Action
 6                                    )   No. 04-10269-GAO
     vs.                              )
 7                                    )
                                      )
 8   ESPEL CALIXTO, JR.,              )
                                      )
 9            Defendant.              )
                                      )
10

11
                       TRANSCRIPT OF CHANGE OF PLEA
12

13
              BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
14                 UNITED STATES DISTRICT JUDGE

15

16                 United States District Court
                 John J. Moakley U.S. Courthouse
17                     1 Courthouse Way
                 Boston, Massachusetts  02210
18                     January 4, 2007
                          3:15 p.m.
19

20
                         * * * * * *
21

22
                 SHELLY M. KILLIAN, RPR, CM, CRR
23                  Official Court Reporter
                 John J. Moakley U.S. Courthouse
24               1 Courthouse Way, Room 3510
                     Boston, MA  02210
25                    (617) 737-7117
```

```
 1  APPEARANCES:

 2  For the Plaintiff:

 3       Lisa M. Asiaf, AUSA
         United States Attorney's Office
 4       John Joseph Moakley Federal Courthouse
         1 Courthouse Way, Suite 9200
 5       Boston, Massachusetts  02210

 6  For the Defendant:

 7       Francis T. O'Brien, Jr., Esq.
         160 State Street, 8th Floor
 8       Boston, Massachusetts  02109

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2           (The following proceedings were held in open court

 3    before the Honorable George A. O'Toole, Jr., United States

 4    District Judge, United States District Court, District of

 5    Massachusetts, at the John J. Moakley United States Courthouse,

 6    1 Courthouse Way, Boston, Massachusetts, on January 4, 2007.)

 7           The defendant, Espel Calixto, Jr., is present with

 8    counsel.  Assistant U.S. Attorney Lisa Asiaf is present.)

 9           THE CLERK:  All rise.  United States District Court

10    for the District of Massachusetts, court is now in session.

11    Please be seated.  For a change of plea in the case of United

12    States of America versus Espel Calixto, which is docket

13    04-10269.

14           Would counsel please identify yourselves for the

15    record.

16           MS. ASIAF:  Good afternoon, your Honor.  Lisa Asiaf

17    on behalf of the United States.

18           MR. O'BRIEN:  Good afternoon, Francis T. O'Brien,

19    Jr. for Mr. Calixto.

20           THE COURT:  And I understand Mr. Calixto intends to

21    offer a plea to three counts in the indictment?

22           MR. O'BRIEN:  That is correct, your Honor.

23           THE COURT:  And there is no plea agreement.

24           MR. O'BRIEN:  Correct.

25           THE CLERK:  Espel Calixto, would you please rise
```

1    and raise your right hand.

2                    (Espel Calixto, sworn.)

3                    THE CLERK:  With respect to criminal number

4    04-10269, you have previously pled not guilty to three counts

5    of a total three-count indictment.  Do you now wish to change

6    your plea, sir?

7                    THE DEFENDANT:  Yes, I do.

8                    THE CLERK:  With respect to Count One, the grand

9    jury charges that from a time unknown to the grand jury but at

10   least by in or about July 2004 and continuing thereafter until

11   at least August 4th, 2004 in Woburn and elsewhere, the District

12   of Massachusetts, Calixto Espel, Jr. A/K/A Pico, the defendant

13   herein, did knowingly and intentionally conspire and agree with

14   persons known and unknown to the grand jury to possess with

15   intent to distribute and to distribute cocaine, a Schedule II

16   controlled substance, in violation of Title 21 United States

17   Section 824(a)(1).

18                    The grand jury further alleges that the offense

19   described herein was committed by the defendant within 1,000

20   feet of the real property comprising a public housing project,

21   more particularly the Creston Avenue Housing Project in Woburn,

22   Massachusetts, in violation of Title 21, United States Code

23   Section 860, all in violation of Title ,21 United States Code

24   section 846.

25                    As to Count One, how do you plead, guilty or not

1    guilty?

2              THE DEFENDANT:  Guilty.

3              THE CLERK:  With respect to Count Two, the grand

4    jury further charges that on or about August 3rd of 2004 at

5    Woburn in the District of Massachusetts, Calixto Espel, Jr.,

6    A/K/A Pico, the defendant herein, did knowingly and

7    intentionally possess with intent to distribute and did

8    distribute cocaine, a Schedule II controlled substance.

9              The grand jury further alleges that the offense

10   described herein was committed by the defendant within 1,000

11   feet of the real property comprising a public housing project,

12   more particularly the Creston Avenue Housing Project in Woburn,

13   Massachusetts, in violation of Title 21, United States Code

14   Section 860.  All in violation of Title 21, United States Code

15   Section 841(a)(1) and Title 18, United States Code Section 2.

16             As to Count Two, how do you plead, guilty or not

17   guilty?

18             THE DEFENDANT:  Guilty.

19             THE CLERK:  And with respect to Count Three, the

20   grand jury further charges that on or about August 4th, 2004 at

21   Woburn in the District of Massachusetts, Calixto Espel, Jr.,

22   A/K/A Pico, the defendant herein, did knowingly and

23   intentionally possess with intent to distribute and did

24   distribute cocaine, a Schedule II controlled substance.

25             The grand jury further alleges that the offense

1    described herein was committed by the defendant within 1,000

2    feet of the real property comprising a public housing project,

3    more particularly the Creston Avenue Housing Project in Woburn,

4    Massachusetts, in violation of Title 21, United States Code

5    Section 860.  All in violation of Title 21, United States Code

6    Section 841(a)(1) and Title 18 United States Code Section 2.

7                How do you plead as to Count Three, guilty or not

8    guilty?

9                THE DEFENDANT:  Guilty.

10                THE COURT:  Mr. Calixto, I'm going to ask you some

11    questions now about your decision to plead guilty to these

12    three counts.  If you don't understand any of the questions

13    that I ask you, let me know and I'll try to make them clearer

14    because I don't want you to answer a question if you're not

15    sure what I'm asking you.  If that's the case, let me know and

16    we'll fix it right away.  Okay?

17                THE DEFENDANT:  Yes, sir.

18                THE COURT:  State, first of all, for the record

19    your full true name.

20                THE DEFENDANT:  Espel Calixto, Jr.

21                THE COURT:  What is your date of birth?

22                THE DEFENDANT:  December 22nd, 1964.

23                THE COURT:  And where were you born?

24                THE DEFENDANT:  Winchester, Massachusetts.

25                THE COURT:  What's the highest level of formal

1    education you've completed?

2                    THE DEFENDANT:  Tenth grade.

3                    THE COURT:  And since leaving school, have you been

4    employed regularly?

5                    THE DEFENDANT:  I didn't hear, your Honor.

6                    THE COURT:  You have been employed since then?

7                    THE DEFENDANT:  Yes.

8                    THE COURT:  What kind of work have you done through

9    your adult life?

10                   THE DEFENDANT:  Well, I worked on the Historical

11   Commission in Woburn, I worked for Printed Circuits in Woburn,

12   and I worked for Burnham Company in Woburn, and I worked for

13   Woburn Vending, which became U.S. Refresh, which became All

14   Seasons.  And then I was employed for A & B vending in

15   Wakefield, Massachusetts.

16                   THE COURT:  And what kinds of work did you do for

17   those companies?

18                   THE DEFENDANT:  Installation of soda machines.  And

19   for Burnham I was installing Xerox copy machines.

20                   THE COURT:  Are you married?

21                   THE DEFENDANT:  No, your Honor.

22                   THE COURT:  Do you have children?

23                   THE DEFENDANT:  Yes.

24                   THE COURT:  How many?

25                   THE DEFENDANT:  Four.

PDF created with pdfFactory trial version www.pdffactory.com

```
 1                 THE COURT:  What are their ages?

 2                 THE DEFENDANT:  Like 21, 22, 12 and 11.

 3                 THE COURT:  Okay.  Have you ever been treated for

 4     any mental illness or disturbance, or are you suffering from

 5     any that you're aware of?

 6                 THE DEFENDANT:  I went for treatment, yeah, for

 7     behavior problems.

 8                 THE COURT:  When was that?

 9                 THE DEFENDANT:  1986 and the 90s.  I think it was

10     1995 and 1996.

11                 THE COURT:  Go ahead.

12                 THE DEFENDANT:  I used to see a doctor by the name

13     of Dr. Robert Paradise.

14                 THE COURT:  Were these counseling sessions?  Is

15     that what they were?

16                 THE DEFENDANT:  Yeah, well, I was finding myself in

17     just situations that I really didn't want to be in and I was

18     wondering why I was getting myself into these situations and I

19     was trying not to.  I was, like, trying not to act out my old

20     ways and I was going through counseling to, you know, I was

21     having behavioral problems.

22                 THE COURT:  Okay.  In addition to counseling, were

23     you prescribed any medications for that?

24                 THE DEFENDANT:  It was recommended but I never got

25     around to it.
```

1          THE COURT:  And was the last time you had any

2    medical treatment for those kinds of issues back in the 90s?

3          THE DEFENDANT:  Correct.

4          THE COURT:  Today have you taken any medication of

5    any kind that might affect you or your ability to know what's

6    going on or understand things or anything like that?

7          THE DEFENDANT:  No.

8          THE COURT:  Now, you're charged in the indictment

9    with one count of conspiracy to distribute cocaine and then two

10   separate counts of incidents of actual distribution.  The

11   conspiracy charge is a charge that someone has participated in

12   an illegal agreement.  The gist of the offense of conspiracy is

13   agreeing with somebody else to commit the offense, whether or

14   not it gets committed.  So in order to prove you guilty of a

15   conspiracy to distribute cocaine, the government would have to

16   show there was an agreement between you and somebody else, more

17   than one person.  It could be just one person, it could be more

18   than one person to distribute -- to work together to achieve

19   the unlawful purpose, which would be the distribution of

20   cocaine.  The government would have to prove you intentionally

21   and knowingly participated in that agreement conspiracy with

22   that objective and with the intention of bringing about that

23   objective.

24          So that's what the government would have to prove

25   with respect to Count One.

1          With respect to the other two counts, the offense

2     is possessing cocaine with the intent to distribute or actually

3     distributing.  And that if it's possession, it means you had

4     possession of it, you had control and custody over cocaine with

5     the intention that it be distributed to somebody else.

6     Distribution can include sales, but it doesn't have to be a

7     sale.  It could be a gift, as long as it goes from one person

8     to another.  And, again, it would be something you had to do on

9     purpose, intentionally, knowing what you're doing.

10          So the government would have to prove that about

11     each of the separate counts Two and Three, which charged

12     individual instances.

13          You understand that?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  In addition, it's alleged in each count

16     that the conspiracy operated and the two instances of

17     distribution occurred within a thousand feet of a public

18     housing project.  And that has implications for sentencing

19     because it increases the potential sentences -- the range of

20     sentence that can be imposed if that fact is established by the

21     government as well, that it was within a thousand feet of a

22     public housing project.

23          Do you understand that?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Now, counsel can correct me if I'm

1    wrong, but I believe given the aggravating factor of the public

2    housing project, the applicable sentencing range is the same

3    for all three of these and it would be between 1 and 40 years,

4    I think.

5              MR. O'BRIEN:  Correct.

6              MS. ASIAF:  That's correct, your Honor, with the

7    one being a mandatory minimum.

8              THE COURT:  One is a mandatory minimum for each of

9    these.  I think the fine range would be up to $2 million for

10   each offense.  And, as I read it, the period of supervised

11   release -- under the federal sentencing system if you're sent

12   to prison, when you get out, you're on what's called supervised

13   release.  You're released but you're still under supervision of

14   a probation officer.  And there are limits on your freedom and

15   you may not be able to do certain things, you may have to do

16   certain other things like report and go to a program, things

17   like that.  And I believe that can be given the aggravating

18   factor for a minimum of eight years up to the rest of your

19   life.  I could be wrong about that.

20             MS. ASIAF:  Your Honor, I have at least six years

21   up to life.  I could be wrong as well.

22             MR. O'BRIEN:  I thought it was six years.

23             THE COURT:  Okay.  Well, I'll take the six years.

24   At any rate, it's a long time.  Six or eight years and possibly

25   the rest of your life under supervision.  Those are the

PDF created with pdfFactory trial version www.pdffactory.com

1  possible ranges.  It's not necessarily what the sentence is

2  going to be, but that's the range within which it's possible.

3          Finally, there's as a mandatory assessment on $100

4  on each of the counts of conviction for a total of $300 that is

5  assessed regardless of what the other provisions of the

6  sentence are.  The hundred dollar assessment is automatic.

7          So do you understand what range of penalty you're

8  exposed to if you're found guilty of these offenses?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Now, as a person who's facing serious

11  charges with such serious potential penalties, you have some

12  important rights that you are giving up by pleading guilty.

13  Perhaps the most important right you have that you're giving up

14  is the right to have a jury trial and have a jury decide

15  whether you're guilty or not of what the government charges you

16  with here.

17          In a jury trial in this court there'd be 12

18  jurors.  They would be selected from a pool of potential jurors

19  that would be composed of people randomly drawn from lists of

20  people who live in eastern Massachusetts.  And those -- that

21  random group is assembled here at the courthouse to be

22  available for any trials that get started.  Some of those

23  people will be available here, and you and your lawyer, as well

24  as the government's lawyer, will participate in the process of

25  selecting the actual 12 people who decide the case.  When the

PDF created with pdfFactory trial version www.pdffactory.com

1    jury had been picked and sworn, the government would be

2    required to offer evidence in support of each of the charges

3    that's made.

4         You would have the opportunity during the course of

5    the trial to challenge or contest the government's evidence.

6    You'd have the right to have any witness against you appear in

7    the courtroom where that person could be cross-examined and

8    questioned about the testimony.  You'd have the right to

9    present evidence of your own that might tend to show you were

10   not guilty of what you're charged with but might simply tend to

11   raise questions about or cast doubt on the reliability of the

12   government's evidence because ultimately it's the government

13   that has the burden of proof to the jury.

14        The jurors would be asked at the end of all the

15   evidence to decide on that evidence whether they had been

16   convinced by the government that you had committed the offenses

17   you're charged with.  They'd be told they could find you guilty

18   only if they were convinced of your guilt beyond a reasonable

19   doubt, that if they had a reasonable doubt about whether you

20   were guilty or not, you'd be entitled to the benefit of that

21   doubt, and in that case they would be required to find you not

22   guilty.  Their verdict would have to be unanimous.  All 12

23   jurors would have to be convinced of your guilt beyond a

24   reasonable doubt.

25        They'd also be told to make a separate judgment

PDF created with pdfFactory trial version www.pdffactory.com

1    about each of the three counts.  It's possible they would come

2    to the same conclusion about all three, but they wouldn't have

3    to.  They could be convinced by the evidence as to some and not

4    convinced by the evidence as to some other.  So they'd be asked

5    to make a separate evaluation and judgment about each of the

6    three counts.

7            So you have a right to have a jury trial along the

8    lines I've just summarized for you, but by pleading guilty

9    you're giving up that right.

10           Do you understand that?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  You also have the right under the

13   Constitution not to incriminate yourself or testify against

14   yourself in any way.  In effect by your plea of guilty, you do

15   both.  You're testifying in a way, of course, by saying you're

16   guilty; but, more importantly, the effect of your pleading

17   guilty is to permit you to be convicted.  So that is an

18   incriminating act on your part.  So that's a right you have

19   that you're also giving up.

20           Do you understand that?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  Now, if I accept your plea this

23   afternoon and find you guilty on these three counts, we will

24   continue the case for sentencing to some time in the future.

25   Between now and then, the probation office will conduct an

PDF created with pdfFactory trial version www.pdffactory.com

1    investigation and write a report called a presentence report.

2    We'll have information about the offenses that are involved

3    here, about you personally and your background, and perhaps

4    about other things that may make a difference in terms of what

5    the sentence might be.  You'll actually have an opportunity to

6    see a draft form of that report before it's presented to the

7    Court.  But ultimately at sentencing I'll have that report from

8    the probation office which will make some recommendations.

9            I'll have also whatever else you want to present,

10   you and your attorney, and anything the government wants to

11   present that bears on sentencing.

12           Between now and then -- let me put it this way:

13   Until then it's not possible for me to predict what the

14   sentence is going to be, except it will be within the range of

15   what we've already talked about.  But I cannot be any more

16   definite or precise than that.  So as you plead guilty here

17   this afternoon, you don't know what the sentence is going to

18   be.  If it turns out the sentence is substantially different

19   from what you thought it would be and that -- and you're

20   disappointed and unhappy about that, that will not be a reason

21   then for you to ask to go back to being not guilty again and be

22   allowed to withdraw your guilty plea.  If I accept the plea and

23   find you guilty this afternoon, that part will be settled; you

24   will be convicted of these offenses.  What the sentence is will

25   be dealt with on terms that pertain to the sentences.  If you

1    have any belief that any error has been made, you'll have an

2    opportunity appeal that and get that corrected.  What you won't

3    be able to do is withdraw the guilty plea on the basis that the

4    sentence was not correct.

5                Is that clear?

6                THE DEFENDANT:  Yes, your Honor.

7                THE COURT:  One of the things that will affect --

8    that may affect the sentence is what the advice is from the

9    sentencing guidelines.  Have you talked about the sentencing

10   guidelines with Mr. O'Brien and had the benefit of his advice

11   about that generally?

12               THE DEFENDANT:  Yes, your Honor.

13               THE COURT:  About how it might work in your case?

14               THE DEFENDANT:  Yes, your Honor.

15               THE COURT:  So you know that the sentencing

16   guidelines suggest a range for the sentence by taking account

17   of a number of factors, some about you personally, some about

18   the offense.  In a drug case one of the important factors that

19   gets considered in the calculation of the guidelines range is

20   how much was involved.  That's an important factor.  One of the

21   important facts about you that makes a difference in the

22   sentencing is what your prior criminal history is.  Those are

23   the kinds of things the guidelines suggest.

24               It used to be the guidelines were more or less

25   mandatory; that is, it was in most cases required that the

PDF created with pdfFactory trial version www.pdffactory.com

1    sentence be within the guideline range.  That's no longer the

2    case.  The Court may impose a sentence that is not within the

3    guideline range so long as the Court gives serious

4    consideration to the advice of the guidelines, pays attention

5    to it, but it is no longer required to follow it.  But it's

6    still an important thing to consider.  That will be one of the

7    things that gets presented in the presentence report by the

8    probation office, and it may be one of the things that you and

9    your lawyer pay attention to in your presentation.

10                 But, again, none of that's been determined as of

11    this time and I can't tell you as we stand -- as you stand here

12    this afternoon what the guideline range is likely to be and

13    whether, whatever it is, the sentence is likely to be within.

14    All of that is yet to be determined.

15                 Do you understand?

16                 THE DEFENDANT:  Yes, your Honor.

17                 THE COURT:  Okay.  I think at this point, Miss

18    Asiaf, I'd like you to summarize what the government would

19    offer to prove in support of the indictment if the case were to

20    be tried.

21                 MS. ASIAF:  Yes, your Honor.

22                 If this case were to go to trial, the government

23    would prove the following facts:  In or about July 2004,

24    confidential witness working with the Woburn Police Department

25    and DEA informed officers that the defendant sold cocaine at

PDF created with pdfFactory trial version www.pdffactory.com

1  the Creston Avenue Housing Project, a public housing project in

2  Woburn.  The confidential witness also told officers the

3  defendant stored cocaine at his niece's residence at 40 Creston

4  Ave. within the Creston Ave. projects, and that he used a cell

5  phone number 781-910-1205 to arrange his drug transactions.

6          On or about July 19, 2004, the CW called the

7  defendant at that cell phone number and arranged a one gram

8  cocaine deal with the defendant.  The confidential witness met

9  the defendant in front of 63 Creston Ave. within the projects

10  where the defendant sold the confidential witness one gram of

11  cocaine for a hundred dollars.  Immediately after the deal, the

12  officers obtained the cocaine from the confidential witness and

13  conducted a field test which came back positive.  Lab analysis

14  confirmed the defendant sold the confidential witness 1.0 grams

15  of cocaine.

16          On or about July 28th and July 29th of 2004, the

17  confidential witness conducted two more controlled purchases of

18  cocaine from the defendant.  On both occasions the confidential

19  witness met with the defendant inside the Creston Ave. housing

20  projects, both times in front of 45 Creston Ave. where the

21  defendant sold the confidential witness approximately one gram

22  of cocaine for a hundred dollars.  Field tests were again

23  conducted and came back positive on both occasions, and lab

24  analysis confirmed that the defendant sold the confidential

25  witness 1.1 grams of cocaine on July 28th and one gram of

PDF created with pdfFactory trial version www.pdffactory.com

1    cocaine on July 29th.

2         As to Count Two, on or about August 3rd, 2004, the

3    confidential witness arranged another controlled purchase of

4    cocaine from the defendant.  The confidential witness was given

5    a recording device and $150 in serialized funds.  Agents drove

6    the confidential witness to the projects where the confidential

7    witness met with the defendant.  They walked behind one of the

8    buildings within the project where the defendant gave two bags

9    of cocaine to the confidential witness in exchange for a

10   hundred dollars.  The confidential witness immediately met with

11   the agents who took the cocaine and the leftover $50 from the

12   confidential witness, field tested the substance which came

13   back positive for cocaine, and the lab confirmed that it

14   contained 0.83 grams of cocaine.

15        As to Count Three, on or about August 4th, the

16   confidential witness called defendant's cell phone again and

17   arranged to buy three bags of cocaine for $150.  The

18   confidential witness was given serialized funds and driven to

19   the projects where the confidential witness met with the

20   defendant and bought the three bags of cocaine for the $150.

21   The confidential witness immediately met with agents who field

22   tested the substance positive for cocaine, and again a DEA lab

23   confirmed that it consisted of 1.2 grams of cocaine.

24        The government would also prove that all of those

25   buys were audio recorded and monitored by surveillance agents.

1    And, in addition, the confidential witness's meeting with the

2    defendant on August 3rd and the actual drug transaction on

3    August 4th were videotaped.

4         The government would also prove defendant was

5    arrested on August 4th and that during booking the officer

6    seized the cell phone that the defendant used in arranging the

7    deals with the confidential witness and $150 in the serialized

8    buy money, which matched the drug buy money given to the

9    confidential witness earlier that day.

10         Finally, the government would prove that the

11   defendant used another individual's unit at the housing project

12   as a stash house and a place to process and package his

13   cocaine.  After the defendant's arrest, that tenant, Rosa

14   Vasquez, consented to a search and cocaine and drug processing

15   equipment, including a scale, was found inside.  The

16   investigation revealed the defendant used this tenant's unit to

17   score and package cocaine since January or February of 2004 and

18   throughout the conspiracy period.  In exchange he gave her a

19   car and periodic payments of cash.

20         In summary fashion, your Honor, that's what the

21   government would prove.

22         THE COURT:  Mr. Calixto did you listen to the

23   summary of what the government would seek to prove to the facts

24   of the case?

25         THE DEFENDANT:  Yes, your Honor.

```
 1              THE COURT:  Are those facts essentially true?

 2              THE DEFENDANT:  Yes, your Honor.

 3              THE COURT:  And is it true that you conspired to

 4    distribute cocaine as alleged in Count One and that on the two

 5    occasions alleged in Counts Two and Three you either

 6    distributed or possessed with the intent to distribute it?

 7              THE DEFENDANT:  Yes, your Honor.

 8              THE COURT:  Has anyone tried to pressure you or

 9    push you into pleading guilty when you don't want to do it?

10              THE DEFENDANT:  No, your Honor.

11              THE COURT:  Is your decision to plead guilty to

12    these three criminal charges your own personal decision?

13              THE DEFENDANT:  Yes, your Honor.

14              THE COURT:  Have you understood all the questions

15    that I've had for you this afternoon?

16              THE DEFENDANT:  Yes, your Honor.

17              THE COURT:  Do you have any questions?

18              THE DEFENDANT:  No, your Honor.

19              THE COURT:  All right.  I'll accept the plea to

20    each count.  I find it's informed and voluntary and

21    intelligently offered and that there is a basis in fact for

22    each of the counts.  And based on the plea, I find the

23    defendant guilty of Counts One, Two and Three of the

24    indictment.

25              THE CLERK:  Sentence date will be set down for
```

PDF created with pdfFactory trial version www.pdffactory.com

1    April 5th, 2007 at 2:15 p.m.

2                THE COURT:  Okay.  We'll be in recess.

3                THE CLERK:  All rise.  Court is in recess.

4                (Adjourned, 3:39 p.m.)

5                        - - - - - - -

6                        CERTIFICATION

7            I certify that the foregoing is a correct

8    transcript of the record of proceedings in the above-entitled

9    matter to the best of my skill ability.

10

11   /s/ Shelly M. Killian
     Shelly M. Killian RPR, CM, CRR
12   Registered Professional Reporter
     May 29, 2008
13

14

15

16

17

18

19

20

21

22

23

24

25

PDF created with pdfFactory trial version www.pdffactory.com